**United States District Court**
**District of Massachusetts**

```
_____
                               )
Neff Group Distributors, Inc., )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No.
                               )     22-11270-NMG
Cognex Corporation,            )
                               )
          Defendant.           )
                               )
_____)
```

**MEMORANDUM & ORDER**

This case arises from the termination of a distributorship. Neff Group Distributors, Inc. ("Neff" or "plaintiff") purchased and resold the products of Cognex Corporation ("Cognex" or "defendant") in Wisconsin, Indiana, Ohio, Pennsylvania and West Virginia for 12 years.  In response to Cognex's decision not to enter into a new contract for calendar year 2022, Neff brings claims against Cognex for violations of the Wisconsin Fair Dealership Law ("the WFDL") and Indiana Deceptive Franchise Practices Act ("the IDFPA"), promissory estoppel and unjust enrichment.  Pending before the Court is defendant's motion to dismiss.

I.    **Background**

A.    **Factual History**

Neff is a fourth-generation, family-owned business with a principal place of business in Indiana.  Neff perceives its function as improving its customers' automation processes by delivering quality products and services.  Cognex is a Massachusetts corporation in the business of manufacturing vision systems, software, sensors and industrial barcode readers used in manufacturing automation.

Neff was initially authorized to sell Cognex's products in Indiana but the relationship later expanded to permit Neff to sell in Ohio, Pennsylvania, West Virginia and Wisconsin. According to the complaint, Neff entered into a series of agreements with Cognex for each territory which Cognex systematically renewed.  Neff alleges it devoted significant time, resources and working capital to support the Cognex brand. It invested in Cognex demonstration equipment to promote Cognex's products and dedicated full-time product managers and application engineers to assist Cognex accounts.

On January 1, 2021, Neff and Cognex entered into three separate, nonexclusive distribution agreements (collectively "the Agreements"): (1) the Wisconsin Agreement, (2) the Indiana

Agreement and the (3) Ohio, Pennsylvania and West Virginia Agreement ("Ohio Agreement").

The Agreements were similar to those entered into in prior years. They prohibited Neff from selling, directly or indirectly, any products that compete with Cognex's products. The Agreements granted Neff a license to use Cognex's trademarks, included a mutually agreed-upon marketing plan, and outlined annual sales quotas which Neff consistently exceeded. In the Agreements, both parties expressly disclaimed reliance on any extra-contractual representations. They also defined a specific and limited geographic territory for each individual Agreement. Finally, the Agreements automatically expired on December 31, 2021 unless the parties mutually agreed to renew them.

On November 2, 2021, Neff representatives met with Cognex management, where the former were informed that Cognex intended to terminate its business relationship with Neff. Following the meeting, Neff received a letter stating that Cognex would not renew the Agreements set to expire on December 31, 2021. Neff alleges that neither the meeting nor the letter explained any justification for the termination. Accordingly, Neff informed its existing and prospective customers that it was no longer authorized to sell Cognex products as of January 1, 2022.

On December 13, 2021, Neff's counsel notified Cognex that the termination of the Agreements subjected Cognex to liability under several legal theories including the Wisconsin Fair Dealership Law.  Shortly thereafter, Cognex sent a letter to Neff indicating that it was withdrawing its November 2, 2021 notice of non-renewal.

**B.   Procedural History**

Neff filed a complaint in Dane County Circuit Court in Wisconsin in March, 2022.  The complaint sets forth counts for: (1) violation of the Wisconsin Fair Dealership Law, (2) violation of the Indiana Deceptive Franchise Practices Act, (3) promissory estoppel and (4) unjust enrichment.  Cognex removed the case to the U.S. District Court for the District of Wisconsin based on diversity jurisdiction.

In April, 2022, Cognex filed the pending motion to dismiss and an expedited motion to transfer the case to the District of Massachusetts because the parties' dispute purportedly arises under an agreement that requires resolution in Massachusetts courts.  Moreover, the choice of law provisions in the Agreements select the laws of the Commonwealth of Massachusetts. Neff opposed the motion to transfer but United States District Judge William M. Conley found that the forum-selection clause in the Agreements was controlling.  Judge Conley allowed the motion

and transferred the case to this Court in August, 2022, together with a fully-briefed pending motion to dismiss.

## II.  Motion to Dismiss

### A.  Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the subject pleading must state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the "court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if "actual proof of those facts is improbable." Ocasio-Hernandez, 640 F.3d at 12 (quoting Twombly, 550 U.S. at 556).  Rather, the necessary "inquiry focuses on the reasonableness of the inference of liability that the plaintiff

is asking the court to draw." Id. at 13.  The assessment is
holistic:

> the complaint should be read as a whole, not parsed
> piece by piece to determine whether each allegation,
> in isolation, is plausible.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013)

(quoting Ocasio-Hernandez, 640 F.3d at 14).

### B.   Application

#### 1.   Wisconsin Fair Dealership Law ("the WFDL")

Defendant contends that, although the WFDL may apply to the
Wisconsin Agreement, Neff's claim for violation of that statute
should be dismissed as to the Indiana and Ohio Agreements.  The
Court agrees.  The WFDL

> protect[s] dealers against unfair treatment by
> grantors, who inherently have superior economic power
> and superior bargaining power in the negotiation of
> dealerships.

Wis. Stat. § 135.025(2)(b).

In the case at bar, Cognex is the grantor and Neff is the
dealer.  A dealership is defined by the statute as

> [a] contract or agreement, either expressed or
> implied, whether oral or written, between 2 or more
> persons, by which a person is granted the right to
> sell or distribute goods or services, or use a trade
> name, trademark, service mark, logotype, advertising
> or other commercial symbol, in which there is a
> community of interest in the business of offering,

> selling or distributing goods or services at
> wholesale, retail, by lease, agreement or otherwise.

Wis. Stat. § 135.02(3)(a).  The dealer, in this case Neff, is "a
person who is a grantee of a dealership situated in this state."
Id. § 135.02(2).  The Wisconsin Agreement defines the sole
dealership between the parties that is situated in the State of
Wisconsin.

The Indiana and Ohio Agreements do not permit business
transactions in the State of Wisconsin.  Although Neff attempts
to persuade the Court that it could potentially service the
Wisconsin locations of an Ohio-based customer under the Ohio
Agreement, that hypothetical scenario is expressly forbidden by
the plain language of the Ohio Agreement. Ohio Agreement, Att.
2, § 4.0 ("The Partner is expressly prohibited from shipping
products outside their Territory without written consent from
the Vice President of American sales.").  The Indiana Agreement
contains equivalent language.

The Wisconsin Agreement is the only contract that addresses
business "situated" in the State of Wisconsin, and thus, it is
the only agreement implicated by the WFDL. See Wis. Stat.
§ 135.02(2); 135.02(3)(a).  The Court will dismiss the Wisconsin
Fair Dealership Law claim as to the Indiana and Ohio Agreements
but, at this juncture, the claim will survive as to the
Wisconsin Agreement.

### 2.   Indiana Deceptive Franchise Practices Act ("IDFPA")

Neff submits that Cognex violated the IDFPA by failing to provide 90 days' notice of non-renewal of the Agreements. See Ind. Code § 23-2-2.7-3.  Defendant counters that Neff's relationship with Cognex does not, however, satisfy the IDFPA definition of a franchise, and thus, Neff cannot state a claim for such a violation.

Under Indiana law, a "franchise" is a contract in which:

(1)   a franchisee is granted the right to engage in the business of dispensing goods or services, under a marketing plan or system prescribed in substantial part by a franchisor;

(2)   the operation of the franchisee's business pursuant to such a plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(3)   the person granted the right to engage in this business is required to pay a franchise fee.

Ind. Code § 23-2-2.5-1(a).  Thus, for the IDFPA to apply, a contract must include three conjunctive elements: (1) existence of a marketing plan, (2) substantial association and (3) payment of a franchise fee. Wright-Moore Corp. v. Ricoh Corp., 980 F.2d 432, 435 (7th Cir. 1992).  The third definitional element is defined by Indiana statute as:

> any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business to sell, resell, or distribute goods, services, or

- 8 -

franchises under a contract agreement, including, but
not limited to, any such payment for goods or
services. "Franchise fee" does not include . . . (3)
the purchase or agreement to purchase goods at a bona
fide wholesale price.

Ind. Code § 23-2-2.5-1(i). Defendant insists that Neff does not
pay a franchise fee to Cognex and the Court agrees. As Cognex
aptly notes, Neff failed to plead facts supporting the existence
of a franchise fee, stating only that the business relationship
was a "franchise."

Neff alleges for the first time in its opposition brief
that Cognex's requirement that Neff purchase demonstration
equipment that it was unable to resell for two years constituted
an "indirect" franchise fee. Both parties cite the Wright-Moore
Corp. v. Ricoh Corp. decision, although Neff relies upon the
Seventh Circuit's opinion in 1990, 908 F.2d 128 (7th Cir. 1990)
("Wright-Moore I"), while Cognex cites the Seventh Circuit's
opinion in 1992, 980 F.2d 432 (7th Cir. 1992) ("Wright-Moore
II").

Reading both opinions together, the Seventh Circuit has
held that the cost of required excess inventory may constitute a
franchise fee under the Indiana franchise statute "depending on
the particular facts of a case." Wright-Moore I, 908 F.2d at
136. For example, the Seventh Circuit suggested that excess
inventory may be an indirect franchise fee if it

> were such that the franchisor could prevent it from
> being liquid (perhaps by preventing the franchise[e]
> from claiming it is an authorized dealer)

but stressed that a sales quota is not a franchise fee unless it is "unreasonably large." Id.

In Wright-Moore II, however, the Seventh Circuit ultimately held that the plaintiff reseller did not pay a franchise fee in the form of excess inventory because it purchased Ricoh copying machines at discounted prices and retained the right to profit from the sale of those machines. 980 F.2d at 436.  Similarly, in the case at bar, Neff "ha[s] the right to sell its inventory of [p]roducts to end-user customers subject to the restrictions set forth in the Agreement." Indiana Agreement, Att. 1, § 10.5.1(b). Such restrictions included that Neff was not to "resell the demonstration equipment within two years of its purchase, unless prior written approval of Cognex is obtained." Id. Att. 2, § 9.0.

Thus, although Neff needed to seek permission from Cognex to resell the demonstration equipment, Cognex could not "prevent it from [ever] being liquid," and Neff retained the right to sell the equipment. See Wright-Moore I, 908 F.2d at 136. Because Neff did not pay Cognex a franchise fee as defined by Indiana statute, the IDFPA does not apply to the Agreements.

The Court will therefore dismiss the claim for violation of the Indiana Deceptive Franchise Practices Act.

### 3.    Promissory Estoppel

Cognex argues that the pending promissory estoppel claim should be dismissed because Neff's alleged reliance on Cognex's "promise" to renew the Agreements was unreasonable and contradicted by the plain language of the Agreements.

To state a claim for promissory estoppel under Massachusetts law, a plaintiff must allege that

(1)  a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee,

(2)  the promise does induce such action or forbearance, and

(3)  injustice can be avoided only by enforcement of the promise.

MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 496 (1st Cir. 2013).

Furthermore, a "bedrock principle" of Massachusetts contract law is that

[i]t is unreasonable as a matter of law to rely on prior oral representations that are (as a matter of fact) specifically contradicted by the terms of a written contract.

<u>Arabian Support & Servs. Co., Ltd.</u> v. <u>Textron Sys. Corp.</u>, 943 F.3d 42, 48 (1st Cir. 2019) (quoting <u>Masingill</u> v. <u>EMC Corp.</u>, 870 N.E.2d 81, 89 (Mass. 2007)).

Plaintiff contends that Cognex made promises outside those set forth in the Agreements that were to expire on December 31, 2021, specifically that Cognex "promised" to renew those Agreements.  Defendant notes, however, that the Agreements contain an integration clause that expressly disclaims reliance on any oral or written extra-contractual representations, warranties, statements or promises.  Agreements, § 5.0.

Because the alleged promises to renew the business relationship contradict the plain language of the written Agreements, it was unreasonable to rely upon them. <u>See</u> <u>Masingill</u>, 870 N.E.2d at 89.  Thus, Neff's claim for promissory estoppel will be dismissed.

### 4.   Unjust Enrichment

Neff's unjust enrichment claim is premised on the theory that Cognex received the benefit of Neff's labor in selling its products for 12 years but then, in terminating the Agreements, retained the customer base produced by Neff, thus unjustly enriching itself.

In Massachusetts, a claim for unjust enrichment requires a plaintiff to show that: (1) he or she conferred a benefit upon

the defendant, (2) the defendant accepted that benefit and (3) the defendant's retention of the benefit would be inequitable without payment for its value. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).

Cognex argues that plaintiff cannot, as a matter of law, state a quasi-contract claim, such as unjust enrichment, when an enforceable contract already exists between the parties. The Court agrees. Under Massachusetts law,

> [a] plaintiff is not entitled to recovery on an unjust-enrichment or quantum-meruit theory where there is a valid contract that covers the same subject matter and defines the obligations of the parties.

Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 541 (1st Cir. 2022). The existence of the written Agreements precludes Neff's unjust enrichment claim, and thus, the Court will allow defendant's motion to dismiss Count IV.

### 5.  Jury Demand

Finally, Cognex asks the Court to strike Neff's jury trial demand because the parties waived the right to a jury trial in the Agreements.

The First Circuit has held that "[t]here is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed." Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (1st Cir. 2002) (citing Aetna Ins. Co. v.

Kennedy ex rel. Bogash, 301 U.S. 389, 393 (1937)).  Courts generally "look to the plain language of the contract's jury waiver to determine whether it unambiguously covers the claims asserted" and to ensure that the jury wavier was entered into knowingly and voluntarily. Id. at 19.

Section 11.5.1 in each of the Agreements states, in pertinent part:

> Each Party acknowledges and agrees that any controversy that may arise under the Agreement, including any exhibits, schedules, attachments, and appendices attached to the Agreement, is likely to involve complicated and difficult issues and, therefore, each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to the Agreement, including any exhibits, schedules, attachments, and appendices attached to the Agreement, or the transactions contemplated by the Agreement.

Agreements, Att. 1, § 11.5.1.

Unsurprisingly, the parties do not dispute the language of the provision which unambiguously provides for waiver of their respective rights to a jury trial on matters arising out of the contract. See Med. Air Tech. Corp., 303 F.3d at 19.  Rather, the dispute is about whether the provision is binding in light of the protections in the IDFPA and the WFDL.

Neff contends that enforcement of a jury waiver provision violates the IDFPA.  The Court finds that Neff is not, however,

a franchisee under the IDFPA, so that statute is inapplicable here.  Next, Neff declares that the WFDL

> provides dealers with rights and remedies in addition
> to those existing by contract or common law [and] may
> not be varied by contract or agreement.

Wis. Stat. § 135.025(2)(c), (3).  Neff then suggests that, because the right to a jury trial is a common law right, a jury waiver provision is prohibited under the WFDL.

The Court is underwhelmed by that explanation because Wisconsin courts have found that

> Wisconsin's Franchise Investment and Fair Dealership
> Laws contain no rule against waiving a jury trial.

Novus Franchising, Inc. v. Superior Entrance Sys., Inc., 2012 WL 3542451, at *2 (W.D. Wis. Aug. 16, 2012).

Therefore, because the jury waiver in the Agreements unambiguously covers Neff's claims and the WFDL does not bar jury waivers, the Court will strike Neff's demand for a jury trial.

**ORDER**

For the foregoing reasons,

1.   Defendant's motion to dismiss Counts II, III and IV
      (Docket No. 10) is **ALLOWED** and those counts are
      **DISMISSED** without prejudice.

2.   Count I remains viable as to the Wisconsin Agreement.

3.   Plaintiff's jury demand is **STRIKEN**.


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge


Dated November 22, 2022